FILED
2015 JUL -9 PM 2:54
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2015 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

DANIEL ESPEJO AMOS,
aka "Danny,"
NAZI NIK,
aka "Nazzi,"
aka "Nazzy,"
GOLBARG RAZDAR,
aka "Goli,"

Defendants.

CR No. 15- CR15-0377

I N D I C T M E N T

[18 U.S.C. § 371: Conspiracy to Commit Bribery and to Defraud the United States; 18 U.S.C. § 201(b)(2): Bribery of a Public Official; 18 U.S.C. § 1546(a): Immigration Fraud; 18 U.S.C. §§ 2(a), (b): Aiding and Abetting, Causing an Act to be Done]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. United States Citizenship and Immigration Services ("USCIS") was an agency of the United States Department of Homeland Security ("DHS") that was responsible for, among other things, administering and processing applications for immigration benefits.

//

2. An Alien File, or A-file, was an official government file created for aliens seeking immigration benefits, aliens who illegally entered the United States ("U.S."), or other individuals subject to the provisions of the Immigration and Nationality Act. Tracking numbers associated with A-files were called A-file numbers or alien numbers.

3. Defendant DANIEL ESPEJO AMOS, also known as ("aka") "Danny" ("defendant AMOS"), was an Immigration Services Officer ("ISO") for USCIS, whose duties included, among other things, reviewing and adjudicating applications and petitions for naturalized citizenship ("N-400 applications").

4. Defendant NAZI NIK, aka "Nazzi," aka "Nazzy" ("defendant NIK"), was an immigration and social services consultant who operated Nazzy Nik Social Services and Nazzi Social Services, Inc. which were located in Los Angeles, California.

5. Defendant GOLBARG RAZDAR, aka "Goli" ("defendant RAZDAR"), worked as an immigration consultant and as a translator for persons applying for immigration and other social services.

6. Conspirator A, aka "Jenny," was an immigration consultant.

**The Path to U.S. Citizenship through the Naturalization Process**

7. USCIS oversaw and administered the process by which a foreign national could apply to become a U.S. citizen. This process was known as citizenship through naturalization. One path to citizenship through naturalization permitted a legal permanent resident (a green card holder) to file an N-400 application with USCIS. To be eligible for naturalized citizenship, an N-400 applicant was required to, among other things: 1) have continuous residence in the United States as a green card holder for at least

five years immediately preceding the date of filing an N-400 application; 2) be physically present in the United States for a least 30 months out of the 5 years immediately preceding the date of the filing of an N-400 application; 3) reside continuously within the United States from the date of the filing of the N-400 application up to the time of naturalization; 4) be able to read, write and speak English and have knowledge and an understanding of U.S. History and Government (hereinafter "Civics"); and 5) be a person of good moral character.

8. Once a legal permanent resident filed an N-400 application, paid the application fees, submitted a photograph and supporting documents, and was fingerprinted, USCIS sent the N-400 applicant an appointment letter to be interviewed by a USCIS ISO at a local USCIS office at a specified date and time.

9. In order to determine whether an N-400 applicant possessed the requisite ability to read, write and speak English, as well as the requisite knowledge and understanding of Civics, an N-400 applicant was required to submit to an interview and examination administered by a USCIS ISO ("a naturalization interview"). Unless a waiver was obtained and accepted by a USCIS ISO, the naturalization interview was to be conducted in English. During the naturalization interview:

a. An applicant was required to answer questions about his/her application and background; and

b. An applicant was required to pass three tests:

i. an English-Reading Test that assessed an applicant's ability to read in English. To pass the English-Reading Test, an applicant was required to read a sentence in a manner that

indicated to the ISO that the applicant understood the meaning of the sentence;

ii. an English-Writing Test that assessed an applicant's ability to write in English. To pass the English-Writing Test, an applicant was required to write a sentence that was read to the applicant by the ISO in a manner that the written sentence was understandable to the ISO; and

iii. a Civics test that assessed an applicant's understanding of U.S. History and Government. To pass the Civics test, an applicant was required to correctly answer at least six of the ten questions that were read to the applicant by the ISO. While the approximate one hundred Civics questions were released by USCIS and were available to the public to prepare for the exam, the particular questions to be administered during the naturalization interview were not to be known to the applicant prior to the interview itself.

10. After the naturalization interview, the applicant was given a form that advised the applicant about his/her results. At that time, the applicant was advised whether his/her naturalization application was granted, continued or denied.

11. If USCIS approved an applicant's application for naturalization, the applicant was required to attend a ceremony and take the Oath of Allegiance to the United States before naturalized citizenship was granted. Where fraud was detected in a naturalization application and/or interview, USCIS could revoke a prior approval, and, in such instances, would advise an applicant that he/she was not eligible to participate in a naturalization ceremony.

12.   Once an applicant's naturalization application was approved and the applicant recited the oath during a naturalization ceremony, USCIS would, upon the return of the applicant's Permanent Resident Card, issue a Certificate of Naturalization.

13.   These introductory allegations are hereby incorporated by reference into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

A.   THE OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, and continuing to at least on or about March 18, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants AMOS, NIK, RAZDAR (collectively "defendants"), together with coconspirator A, and other coconspirators known and unknown to the Grand Jury, knowingly conspired to commit offenses against the United States, in violation of Title 18, United States Code, Section 371, namely:

1.   To directly and indirectly, corruptly give, offer, and promise something of value to a public official, with intent to: (i) influence any official act; (ii) influence such public official to commit and aid in committing, and collude in, and allow, any fraud, and make opportunity for the commission of any fraud on the United States; and (iii) induce such public official to do an act and omit to do an act in violation of his official duty, in violation of Title 18, United States Code, Section 201(b)(1);

2.   Being a public official, to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive something of value personally and for another person in return for: (i) being influenced in the performance of any official act; (ii) being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and to make opportunity for the commission of any fraud on the United States; and (iii) being induced to do and omit to do any act in violation of such public official's official duty, in violation of Title 18, United States Code, Section 201(b)(2);

3.   To defraud the United States and agencies thereof, including the Department of Homeland Security, by impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely, USCIS, by deceitful and dishonest means;

4.   To knowingly utter, use, attempt to use, possess, obtain, accept, or receive a visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute and regulation for entry into and as authorized stay and employment in the United States, namely, a Certificate of Naturalization, knowing it to have been procured by means of a false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained in violation of Title 18, United States Code, Section 1546(a);

5.   To knowingly make, and cause to be made under oath subscribed as true under penalty of perjury, under Title 28, United States Code, Section 1746, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, namely, N-400 applications, which statement defendants then and there knew were false; and, in violation of Title 18, United States Code, Sections 1546(a); and

6.   To knowingly present to USCIS an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, namely, N-400 applications which each contained a statement under oath subscribed as true under penalty of perjury, under Title 28, United States Code, Section 1746, that is a

false statement with respect to a material fact and that fails to contain any reasonable basis in fact and law.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be carried out, in substance, as follows:

1.   Defendant NIK, defendant RAZDAR, Coconspirator A, and other coconspirators known and unknown to the Grand Jury, would solicit money from applicants seeking to obtain naturalized citizenship.

2.   The applicant coconspirators would directly and indirectly give money to defendant NIK, defendant RAZDAR, Coconspirator A, and other coconspirators known and unknown to the Grand Jury, for their assistance in obtaining naturalized citizenship for the applicants and to fund bribe payments to public officials.

3.   Defendant NIK, defendant RAZDAR, Coconspirator A, and other coconspirators known and unknown to the Grand Jury, would directly and indirectly agree to pay, pay and cause to be paid bribes, in the form of cash payments, to defendant AMOS in exchange for approving N-400 applications for applicant coconspirators.

4.   Defendant AMOS would solicit money from defendant NIK, namely, cash payments, in exchange for obtaining naturalized citizenship for unqualified applicants.

5.   Defendant AMOS would solicit money from defendant RAZDAR, namely, cash payments, in exchange for obtaining naturalized citizenship for unqualified applicants.

6.   Defendant NIK, defendant RAZDAR, and other coconspirators known and unknown to the Grand Jury, would instruct the applicant coconspirators to pay an amount of money that included the bribe

amount that defendant AMOS would directly and indirectly demand, seek, receive, accept and agree to accept in exchange for defendant AMOS approving N-400 applications for the applicant coconspirators.

7. Defendant NIK would give defendant AMOS a cellular telephone to enable defendant NIK, defendant RAZDAR and other coconspirators known and unknown to the Grand Jury, to communicate with defendant AMOS about unqualified applicants seeking to obtain naturalized citizenship.

8. Defendant NIK would pay or cause to be paid a cellular telephone bill for a cellular telephone that was used by defendant AMOS.

9. Defendant NIK, defendant RAZDAR, and other coconspirators known and unknown to the Grand Jury, would in person, by telephone and by text provide defendant AMOS with the alien number of a specific applicant coconspirator and/or the corresponding N-400 application number and the date of an applicant coconspirator's scheduled naturalization interview.

10. Defendant NIK would direct the applicant coconspirators to miss their scheduled interview if defendant AMOS was not scheduled to work that day.

11. Defendant AMOS would directly and indirectly solicit and accept bribes from defendant NIK, defendant RAZDAR, and other coconspirators known and unknown to the Grand Jury, in exchange for approving, and helping to approve, the applicant coconspirators' N-400 applications.

12. Defendant NIK, defendant RAZDAR, and other coconspirators known and unknown to the Grand Jury would pay and cause to be paid cash bribes to defendant AMOS, and other conspirators known and

unknown to the Grand Jury, in exchange for their performance of official acts and specifically in order to ensure that USCIS would approve N-400 applications for unqualified applicants, thereby, rendering the applicant coconspirators eligible to become naturalized U.S. citizens.

13. Defendant AMOS would interview the applicant coconspirators and during the interview would assist them in passing the English-Reading, English-Writing and Civic portions of the exam.

14. Defendant AMOS would permit applicant coconspirators to answer questions in their native language regardless of whether the conspirator applicants had provided a legitimate exemption excusing them from the English-Writing, English-Reading and Civics portions of the exam.

15. Defendant AMOS would accept a telephone, paid telephone service, and a trip abroad from defendant NIK in exchange for approving, and helping to approve, the applicant coconspirators' N-400 applications.

C. <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendants AMOS, NIK, RAZDAR, and others known and unknown to the Grand Jury, committed and caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

<u>Applicant Coconspirator M.N.</u>

<u>Overt Act No. 1</u>: On or about a date between June 20, 2007 and August 28, 2007, defendant RAZDAR paid defendant NIK money, that is, approximately $1,500 in cash, in exchange for having defendant AMOS approve applicant coconspirator M.N.'s N-400 application.

Overt Act No. 2: On or about August 28, 2007, defendant AMOS conducted a naturalization interview of applicant coconspirator M.N.

Overt Act No. 3: On or about August 28, 2007, defendant AMOS approved applicant coconspirator M.N.'s N-400 application.

Overt Act No. 4: On or about a date between June 20, 2007 and August 30, 2007, defendant NIK paid defendant AMOS money, that is, approximately $500 to $2,000 in cash, in exchange for defendant AMOS approving applicant coconspirator M.N.'s N-400 application.

Applicant Coconspirator H.S.

Overt Act No. 5: On or about May 26, 2010, applicant coconspirator H.S. paid defendant NIK money, that is, approximately $1,500 to $2,000 in cash, in order to obtain naturalized citizenship.

Overt Act No. 6: On or about May 26, 2010, defendant AMOS conducted a naturalization interview of applicant coconspirator H.S.

Overt Act No. 7: On or about July 7, 2010, defendant AMOS falsely indicated that applicant coconspirator H.S. had passed the English-Writing, English-Reading and Civics portions of the naturalization test.

Overt Act No. 8: On or about July 7, 2010, defendant AMOS approved applicant coconspirator H.S.'s N-400 application.

Overt Act No. 9: On or about a date between May 26, 2010 and July 9, 2010, NIK paid defendant AMOS money, that is, approximately $250 in cash, in exchange for defendant AMOS approving applicant coconspirator H.S.'s N-400 application.

Applicant Coconspirator T.C.S.

Overt Act No. 10: On or about a date between February 26, 2010 and July 28, 2010, applicant coconspirator T.C.S. paid defendant NIK

money, that is, approximately $2,000 to $2,500 in cash, in order to obtain naturalized citizenship.

Overt Act No. 11: On or about July 20, 2010, defendant AMOS conducted an immigration naturalization interview of applicant coconspirator T.C.S.

Overt Act No. 12: On or about July 28, 2010, defendant AMOS falsely indicated that applicant coconspirator T.C.S. had passed the English-Writing, English-Reading, and Civics portions of the naturalization test.

Overt Act No. 13: On or about July 28, 2010, defendant AMOS approved applicant coconspirator T.C.S.'s N-400 application.

Overt Act No. 14: On or about a date between April 21, 2010 and July 30, 2010, defendant NIK paid defendant AMOS money, that is, approximately $1,000 to $2,000 in cash, in exchange for defendant AMOS approving applicant coconspirator T.C.S.'s N-400 application.

Applicant coconspirator K.N.

Overt Act No. 15: On or about a January 28, 2013 applicant coconspirator K.N. failed to show for the January 28, 2013 naturalization interview. USCIS did not notify applicant coconspirator of a new naturalization interview date.

Overt Act No. 16: On or about a date between December 26, 2012 and February 12, 2013, defendant RAZDAR agreed to pay defendant AMOS money, that is, $3,000 in cash, to obtain naturalized citizenship for applicant coconspirator K.N.

Overt Act No. 17: On or about February 12, 2013, defendant AMOS conducted an unscheduled naturalization interview of applicant coconspirator K.N.

Overt Act No. 18: On or about February 12, 2013, defendant AMOS falsely indicated that applicant coconspirator K.N. had passed the Civics portion of the naturalization test.

Overt Act No. 19: On or about February 12, 2013, defendant AMOS approved applicant coconspirator K.N.'s N-400 application.

Overt Act No. 20: On or about a date between December 26, 2012 and February 14, 2013, defendant RAZDAR paid defendant AMOS money, that is, approximately $1,500 to $2,000 in cash, in exchange for defendant AMOS approving applicant coconspirator K.N.'s N-400 application.

Applicant Coconspirator R.G.W.

Overt Act No. 21: On or about a date between September 23, 2013 and December 20, 2013, applicant coconspirator R.G.W. met with Coconspirator A and defendant NIK.

Overt Act No. 22: On or about December 12, 2013, defendant AMOS received a text message from defendant NIK containing the A-file number for applicant coconspirator R.G.W. and the date "Dec 20."

Overt Act No. 23: On or about December 20, 2013, defendant AMOS received a text message from defendant NIK that read, "He's there."

Overt Act No. 24: On or about December 20, 2013, defendant AMOS conducted a second naturalization interview of applicant coconspirator R.G.W.

Overt Act No. 25: On or about December 20, 2013, defendant AMOS falsely indicated that applicant coconspirator R.G.W. had passed the English-Writing, English-Reading and Civics portions of the naturalization test.

Overt Act No. 26: On or about December 20, 2013, applicant coconspirator R.G.W. gave Coconspirator A $5,000 "to pay his interviewer" in exchange for obtaining naturalized citizenship.

Overt Act No. 27: On or about January 9, 2014, defendant AMOS approved applicant coconspirator R.G.W.'s N-400 application.

Overt Act No. 28: On or about a date in between December 20, 2013 and January 17, 2014, defendant NIK paid defendant AMOS money, that is, approximately $500 in cash, in exchange for defendant AMOS approving applicant coconspirator R.G.W.'s N-400 application.

Applicant coconspirator M.H.Z.

Overt Act No. 29: On or about a date between November 16, 2013 and March 18, 2014, applicant coconspirator M.H.Z. agreed to pay Coconspirator A $6,500 in order to obtain naturalized citizenship.

Overt Act No. 30: On or about a date between November 16, 2013, and March 18, 2014, applicant coconspirator M.H.Z. met with Coconspirator A and defendant NIK.

Overt Act No. 31: On or about March 18, 2014, defendant AMOS conducted a naturalization interview of applicant coconspirator M.H.Z.

Overt Act No. 32: On or about March 18, 2014, defendant AMOS falsely indicated that applicant coconspirator M.H.Z. had passed the English-Writing, English-Reading and Civics portions of the naturalization test.

Overt Act No. 33: On or about a date between February 13, 2014 and March 18, 2014, defendant AMOS agreed to accept from defendant NIK $1,000 in cash to obtain naturalized citizenship for applicant coconspirator M.H.Z.

<u>Overt Act No. 34</u>: On or about March 18, 2014, defendant AMOS approved applicant coconspirator M.H.Z.'s N-400 application.

<u>Overt Act No. 35</u>: On or about March 18, 2014, following the naturalization interview with defendant AMOS, applicant coconspirator M.H.Z. gave Coconspirator A an envelope containing $6,500 in cash.

COUNT TWO

[18 U.S.C. § 201(b)(2)]

On or about a date between December 26, 2012 and February 14, 2013, in Los Angeles County, within the Central District of California, defendant AMOS, being a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, United States currency, personally and for another person, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and to allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do and omit to do an act in violation of his official duty.  More specifically, defendant AMOS corruptly demanded, sought and agreed to receive approximately $3,000 in United States currency from Golbarg Razdar, aka "Goli," in exchange for defendant AMOS being influenced to perform an official act with respect to K.N.'s naturalized citizenship application.

COUNT THREE

[18 U.S.C. § 201(b)(2)]

On or about date between December 20, 2013 and January 17, 2014, in Los Angeles County, within the Central District of California, defendant AMOS, being a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, United States currency, personally and for another person, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and to allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do and omit to do an act in violation of his official duty. More specifically, defendant AMOS corruptly demanded, sought and agreed to receive approximately $500 in United States currency from defendant Nazi Nik, aka "Nazzi," aka "Nazzy," in exchange for defendant AMOS being influenced to perform an official act with respect to R.G.W.'s naturalized citizenship application.

COUNT FOUR

[18 U.S.C. § 201(b)(2)]

On or about a date between February 13, 2014 and March 18, 2014, in Los Angeles County, within the Central District of California, defendant AMOS, being a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, United States currency, personally and for another person, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and to allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do and omit to do an act in violation of his official duty. More specifically, defendant AMOS corruptly demanded, sought and agreed to receive approximately $1,000 in United States currency from defendant Nazi Nik, aka "Nazzi," aka "Nazzy," in exchange for defendant AMOS being influenced to perform an official act with respect to M.H.Z.'s naturalized citizenship application.

COUNT FIVE

[18 U.S.C. § 1546(a), 2(a), (b)]

From on or about August 28, 2011 and continuing through October 7 2011, in Los Angeles County, within the Central District of California, defendants AMOS and RAZDAR, aiding and abetting each other, knowingly caused M.K.D. to have possessed, obtained, accepted and received a visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute and regulation for entry into and as authorized stay and employment in the United States, namely, a Certificate of Naturalization for M.K.D., knowing it to have been procured by means of a false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained.

COUNT SIX

[18 U.S.C. § 1546(a), §§ 2(a), (b)]

On December 20, 2013, in Los Angeles County, within the Central District of California, defendants AMOS and NIK, aiding and abetting each other, knowingly made and caused to be made under oath subscribed as true under penalty of perjury under Title 28, United States Code Section 1746 a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, namely, the approval of alien R.G.W.'s N-400 application for naturalized citizenship, which defendant AMOS and defendant NIK then and there

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

knew was false, in that alien R.G.W. had failed to pass the English-Writing; English-Reading and Civics Test portions of the naturalization interview.

A TRUE BILL

/s/

Foreperson

EILEEN M. DECKER
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Public Corruption & Civil Section

ELISA FERNANDEZ
Assistant United States Attorney
Public Corruption & Civil Rights Section